1. INSURANCE COMPANIES—FRANCHISE TAXES—STATUTES—CONSTRUCTION.
Tax Law, § 187 (Laws 1896, p. 859, c. 908, as amended by Laws 1897, p. 630, c. 494), as amended by Laws 1901, p. 297, c. 118, provides that an annual state tax for the privilege of exercising corporate franchises within the state equal to 1 per cent. of the gross amount of premiums received during the preceding calendar year for business done in the state, without regard to the form of such premiums, shall be paid annually into the state treasury on or before the 1st day of June by every domestic insurance corporation, etc. Held, that the tax so imposed was not a tax on the property of insurance companies, but was purely an annual franchise tax, and hence the tax payable on June 1, 1902, was for the entire preceding year, and not for such part thereof as elapsed after the act went into effect.

2. SAME—PREMIUMS TAXABLE.
Tax Law, § 187 (Laws 1896, p. 859, c. 908, as amended by Laws 1897, p. 630, c. 494), as amended by Laws 1901, p. 297, c. 118, imposes a franchise tax on the gross amount of premiums received during the preceding calendar year by domestic insurance companies, and subdivision 3 defines the term "gross premiums" to include in addition to all other premiums such premiums as are collected from policies subsequently canceled and from reinsurance. Held, that the franchise tax was leviable on all premiums collected by the insurance company, and was not limited merely to premiums on new business.

Certiorari by the people, on the relation of the Provident Savings Life Assurance Society of New York, against Nathan L. Miller, as Comptroller of the State, to review proceedings of the comptroller denying the application of the relator for a revision and readjustment of relator's assessment for franchise taxes under Tax Law, § 187 (Laws 1896, p. 859, c. 908). Comptroller's determination affirmed.

Argued before PARKER, P. J., and SMITH, CHASE, and CHESTER, JJ.

Andrew Hamilton, for relator.
John Cunneen, Atty. Gen., and William H. Wood, for defendant.

CHESTER, J. Prior to the amendment of section 187 of the tax law (Laws 1896, p. 859, c. 908, as amended by Laws 1897, p. 630, c. 494) made by Laws 1901, p. 297, c. 118, § 1, life insurance corporations were exempt from tax for the privilege of exercising their corporate

franchises in this state. Section 187, as amended in 1901, provides that:

"An annual state tax for the privilege of exercising corporate franchises or for carrying on business in their corporate or organized capacity within this state equal to one per centum on the gross amount of premiums received during the preceding calendar year for business done in this state, whether such premiums were in the form of money, notes, credits, or any other substitute for money, shall be paid annually into the treasury of the state, on or before the first day of June by * * * every domestic insurance corporation, incorporated, organized or formed under, by or pursuant to a general or special law."

Other provisions of the tax law as amended by Laws 1901, p. 297, ·c. 118, required every such insurance corporation on or before March 1st in each year to make a written report to the comptroller of its condition at the close of its business on December 31st preceding, stating the entire amount of premiums received on business done thereby in this state during the year ending with such day (Id. p. 298, § 189, subd. 5), and to pay such tax into the state treasury on or before the 1st day of June of each year (Id. p. 299, § 194). The amendatory act (Laws 1901, p. 297, c. 118), became a law March 16, 1901, and took effect October 1st of that year. On February 3, 1902, the relator, a domestic life insurance corporation, filed with the comptroller a written report, duly verified, showing the gross amount of premiums collected on business done in the state for the year ending December 31, 1901, to have been $38,304.24. The comptroller thereafter called the attention of the relator to a discrepancy between that report and one made by it to the state insurance department. The relator then, at the request of the comptroller, but under protest, filed with him another verified report, showing its total premium receipts for the year 1901 on business done in the state to be $619,346.01, which amount represented premiums upon its total business transacted on policies issued and in force over a series of years prior to and including the year 1901, and that $38,304.24 was the entire amount of premiums received on business done on policies issued by it in this state during 1901. The comptroller thereupon assessed the relator for its franchise tax $6,193.46, being at the rate of 1 per centum upon said sum of $619,346.01. The relator then applied to the comptroller to revise, readjust, and resettle the account for such tax, and the comptroller denied the application. The writ issued in this case brings up for review the correctness of that determination.

It is urged on behalf of the relator that, as the amendment to the tax law imposing a franchise tax upon domestic insurance corporations did not take effect until October 1, 1901, no tax for the year 1901 can be imposed upon it, and that any tax which is imposed should be based only upon premiums received during the calendar year for which it is imposed; that is, upon first year premiums only. It seems to me that neither of these contentions can be maintained under the law. The tax imposed by the law is not a tax upon relator's property, but it is purely a franchise tax—that is, a tax, as the law declares, for the privilege of exercising its corporate franchises

or for carrying on business in its corporate or organized capacity within the state. It is an annual state tax for such privilege, and is payable on or before the 1st day of June in each year. The law imposing it having taken effect on October 1, 1901, the first tax payable under the law was payable June 1, 1902. It is not correct to say that the tax is a tax for the year 1901. It is a tax payable annually not later than June 1st, but it is based upon a report required to be made not later than the preceding March 1st, stating the entire amount of premiums received on business done by the corporation in this state during the year ending with the preceding December 31st— in this case December 31, 1901. The tax is in no sense a retroactive one, although the amount of it is measured by the past year's business. The Legislature might have provided that it should be measured by the value of its capital stock, or by the amount of insurance in force at the end of the preceding year, and not by its premium receipts for such year, and still have made the tax payable annually upon June 1st. The Court of Appeals in People v. Spring Val. Hydraulic Gold Co., 92 N. Y. 383, sustained a tax based on the cash value of the capital stock of a corporation under Laws 1880, p. 763, c. 542, which was passed June 1st of that year, to take effect immediately, and which required the corporation to make reports to the comptroller "annually" on or before the 15th day of November, and to pay the tax into the treasury of the state annually. The corporation upon which the tax was imposed was required by section 4, p. 765, of the act, "to transmit the amount of said tax to the treasury of the state within fifteen days from the first day of January in each and every year." In commenting upon this language in the opinion of the court Judge Andrews says (page 388):

"This language is explicit, and can be satisfied only by a payment in each January after the passage of the act. In no other way can there be a compliance with the direction that the tax shall be paid within fifteen days from the 1st day of January in 'each and every year.' By the construction claimed by the defendant no tax would be payable until January, 1882—nineteen months after the passage of the act—and this would not be a payment 'annually,'. as provided in the third section."

He further says (page 390):

"It is claimed by the defendant that if the statute is construed as requiring corporations to make a report November, 1880, and to pay a tax under the act in January, 1881, it necessitates giving a retrospective effect to the act, which is contrary to principle and the accepted canons of construction. But we are of opinion that this objection is not well founded. It must be borne in mind that the tax which corporations become liable to pay under the act of 1880 is a tax for state purposes only, and takes the place of the tax for state purposes under the former system. Corporations have been relieved from the one and are required to pay the other, and in paying the first tax under the act of 1880, in January, 1881, they are simply paying their share of a prospective expenditure of the state for the current fiscal year. The tax was in no just sense the imposition of a burden for past transactions, or a tax on franchise or business prior to June 1, 1880. The fact that the amount of the tax may in some cases be fixed by reference to the business of the company during the year does not make the act retrospective. The burden it imposes is future, and for future expenditures. It is competent for the Legislature to adopt such method of valuing the franchise or property of corporations for the purpose of taxation as it deems proper."

With respect to the basis for computing the tax the statute clearly supports the method followed by the comptroller. It provides for the computation of the tax "on the gross amount of premiums received during the preceding calendar year for business done in this state"; not upon the gross amount of *first year* premiums received, or upon the gross amount of premiums received *exclusive of renewal premiums.* The words italicised, or synonymous phrases, which are not in the statute, would have to be read into it to support the contention of the relator. The collection of renewal premiums is just as much "business done in this state" as the collection of first year premiums, and it takes both to constitute the "gross amount of premiums received during the preceding calendar year." That this construction is correct is shown by the definition contained in subdivision 3, § 187, as amended by Laws 1901, p. 297, c. 118: "The term 'gross premiums' as used in this article shall include in addition to all other premiums, such premiums as are collected from policies subsequently cancelled and from reinsurance."

The relator cites as an authority in support of its argument Metropolitan Life Insurance Co. v. Darenkamp, 66 S. W. 1125, decided by the Kentucky Court of Appeals, which was a case where that court decided that the tax under an ordinance requiring every insurance company doing business in the city of Covington to pay annually to the city treasury a certain sum "on every $100 of premiums received on business done in the city" during a specified prior time must be based on premiums received on new policies issued during such time, and not upon outstanding policies. The only reasons given for this conclusion are far from convincing. They are contained in the sentences in the opinion as follows:

"The particular phraseology of the ordinance which we are asked to construe, 'premiums received on business done,' is very obscure, and, if any meaning is to be attached to the words 'on business done,' we must conclude that they refer to premiums paid upon new policies.  *  *  *  If the ordinance did not mean this, they should have been omitted altogether."

That case, however, even if it was properly decided, is fairly to be distinguished from the one we are considering, for, unlike that case, here we have the use of the term "gross premiums," and the definition of that term in the statute which we have quoted, which seems to clearly require the construction we have given.

The determination of the comptroller should be confirmed, with $50 costs and disbursements. All concur.